UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HIRAM J. RUSSELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:15-cv-00069-TWP-DML |
| | ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Hiram J. Russell ("Russell") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I.   BACKGROUND

**A.   Procedural History**

On March 12, 2013, Russell filed an application for DIB, alleging a disability onset date of December 27, 2012, due to chronic lymphocytic leukemia. Russell's claim was initially denied on April 12, 2013, and upon reconsideration on June 14, 2013. Russell filed a written request for hearing on August 16, 2013. On December 12, 2014, a hearing was held before Administrative Law Judge Dwight D. Wilkerson (the "ALJ"). Russell was present and represented by counsel.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

William R. Harpool, an impartial vocational expert, appeared and testified at the hearing. On January 8, 2015, the ALJ denied Russell's application for DIB. Following this decision, Russell requested review by the Appeals Council. On May 13, 2015, the Appeals Council denied Russell's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On June 10, 2015, Russell filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

At the time of his alleged disability onset date, Russell was 59 years old, and he was 61 years old at the time of the ALJ's decision. Russell reported receiving a ninth grade education and obtaining his GED when he was 18 years old. Prior to the onset of his alleged disability, Russell had been employed as an equipment operator and laborer, operating bucket trucks and cranes and carrying heavy steel.

On December 27, 2012 (Russell's alleged disability onset date), Russell presented to the Schneck Medical Center ("Schneck") in Seymour, Indiana, after experiencing progressive fatigue. He had been experiencing fatigue for about eight to twelve months, but in the previous week, his fatigue significantly worsened. Russell's wife reported that he had been pale for six to seven months. Russell reported that he had not been able to do his outdoor physical labor for employment for a number of months because he did not have energy. He attributed this to depression, for which he was being treated by his primary care physician with no improvement. On the day Russell reported to Schneck, he was experiencing a high fever of 102 degrees for two days, hot flashes, and generalized weakness. Blood tests revealed that Russell had a hemoglobin count of 3.8. Russell was diagnosed with severe anemia (Filing No. 17-7 at 3–4).

After being hospitalized overnight at Schneck, Russell was transferred to Indiana University Health's University Hospital ("University Hospital") in Indianapolis, Indiana where he was diagnosed with chronic lymphocytic leukemia ("leukemia") after a bone marrow biopsy and examination of the bone marrow. Russell reported that, immediately prior to presenting to Schneck, his symptoms were acutely worse. He complained of throbbing in his ears, which he claimed worsened when he stood or sat up. Once at University Hospital, Russell was admitted to the inpatient hematology service. He received blood transfusions and medication to address his anemia and leukemia. Russell was given his first dose of chemotherapy while at University Hospital, and afterward, he reported that he felt much better and stronger without fatigue. He was counseled regarding his ongoing treatment plan, which included chemotherapy. Russell was discharged from University Hospital on January 4, 2013, in stable condition and with no complaints. Upon discharge, he had a follow-up oncology appointment scheduled with Dolores C. Olivarez, M.D. ("Dr. Olivarez") on January 7, 2013, to address and treat his leukemia (Filing No. 17-7 at 4–15, 44–47).

Russell began his out-patient chemotherapy and oncology treatment with Dr. Olivarez at Schneck on January 9, 2013. Russell received six cycles of chemotherapy, with the last cycle being administered on May 30, 2013. Dr. Olivarez continued to monitor Russell through a series of follow-up appointments. Dr. Olivarez's treatment notes record that Russell was tolerating the chemotherapy well, that he was feeling better and better over time, and his conditions were objectively improving. Dr. Olivarez noted that Russell's vital signs and weight were stable, and he was looking well. At the time of his May 1, 2013 visit with Dr. Olivarez, Russell's hemolysis had completely resolved. At the follow-up appointment on September 11, 2013, Dr. Olivarez noted that Russell's hemolysis was resolved, his last blood transfusion was required on February

1, 2013, there was no need for continued treatment, and Russell was clinically stable. Although his leukemia was in remission, Russell sometimes complained of having difficulties with concentration and memory issues, which was thought to be related to his anemia and chemotherapy. Dr. Olivarez opined that these concentration and memory issues would resolve themselves as more time passed from the last round of chemotherapy (Filing No. 17-7 at 76–86, 94–98; Filing No. 17-8 at 2–3, 6–11).

Approximately six months prior to his alleged disability onset date, Russell presented to St. Vincent Physician Network in July 2012, where his blood tests indicated abnormal results. It appears that no follow-up was undertaken. In September 2012, it was noted that Russell presented for "chronic anxiety? mild depression due to not working." (Filing No. 17-7 at 101.) Russell returned to St. Vincent Physician Network in September 2013 for a rash covering parts of his body and bug bites. *Id.* at 105. Russell presented again in February 2014 (almost a year after chemotherapy was completed) to be evaluated for dementia because he had concerns about his memory and focus, and he felt unsafe operating a crane. However, upon examination, all signs and symptoms were normal. *Id.* at 107–08. On March 13, 2014, Russell presented for follow-up regarding his memory issues, and a Folstein Mini Mental Examination was conducted, which produced normal results. *Id.* at 110–12.

On June 9, 2014, Russell presented to Daniel R. Anderson, M.D. ("Dr. Anderson") with complaints of a skin lesion and memory issues. Dr. Anderson noted a normal mood and repetitive questions. On September 10, 2014, Russell returned for a follow-up with Dr. Anderson, and his conditions were noted as unchanged (Filing No. 17-8 at 14–17, 22–25).

## II.     DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his Residual Functional Capacity ("RFC") will be assessed and used for the fourth and fifth steps. RFC is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20

C.F.R. § 404.1545(a)(1); SSR 96-8p).  At step four, if the claimant is able to perform his past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred.  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome."  *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted."

*Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Russell met the insured status requirement of the Act for DIB through December 31, 2017. The ALJ then began the five-step analysis. At step one, the ALJ found that Russell had not engaged in substantial gainful activity since December 27, 2012, the alleged disability onset date. At step two, the ALJ found that Russell had the "following medically determinable impairments: chronic lymphocytic leukemia in remission, resolved autoimmune hemolytic anemia secondary to chronic lymphocytic leukemia, depression, anxiety, osteoarthritis, leg length discrepancy, cellulitis, insect bites, dermatitis, and cystic skin lesion left face." ([Filing No. 17-2 at 22](Filing No. 17-2 at 22).) However, after the ALJ carefully reviewed each of these medically determinable impairments, the ALJ determined that none of these impairments had or would "significantly limit[] [Russell's] ability to perform basic work activities." *Id.* at 28. Thus, the ALJ concluded that Russell did not have any severe impairments. Because Russell did not have any severe impairments that were expected to last for a twelve-month duration, the ALJ concluded that Russell was not disabled at Step 2 of the sequential evaluation process. As a result, the ALJ did not proceed to Steps 3 through 5 or the RFC determination, and the ALJ denied Russell's application for DIB because he was not disabled.

## IV. DISCUSSION

In his request for judicial review, Russell asserts two bases for remanding this case to the ALJ for further consideration. First, Russell argues that the ALJ erred in determining he lacked an impairment or combination of impairments that would significantly limit his ability to do basic work activities (*i.e.*, a severe impairment). Second, Russell argues that the ALJ did not give sufficient weight to the report of physical therapist Belinda Hays ("Ms. Hays") concerning Russell's RFC. The Court will address each argument in turn.

### A. The ALJ appropriately determined that Russell lacked a severe impairment.

Russell asserts that the ALJ's finding that he did not have any severe impairments was erroneous; he argues that the ALJ's Step 2 analysis was flawed. Pointing to *Bowen v. Yuckert*, 482 U.S. 137 (1987), Russell claims that his ability to perform physical activities such as lifting, reaching, pushing, and pulling were relevant to the ALJ's determination of severity, and the evidence that was admitted supported a finding of a severe impairment. In his opening brief, Russell also asserted that the ALJ erred by cutting short the questioning during the administrative hearing and not allowing Russell to permit additional testimony regarding his physical limitations (Filing No. 19 at 11–12).

Quoting *Thorps v. Astrue*, 873 F. Supp. 2d 995, 1004 (N.D. Ill. 2012), Russell argues that "[t]he severe impairment requirement is a *de minimis* requirement designed to weed out frivolous claims," and his claim was not frivolous. Therefore, his claim should not have been "weeded out" at Step 2. He asserts that his depression, life-threatening anemia, and the several months of chemotherapy and leukemia support his claim for disability and should be considered severe. Russell also asserts that his Eastern Cooperative Oncology Group ("ECoG") score was

mischaracterized by the ALJ. He claims that his ECoG score of 1 during his chemotherapy treatment supports a finding of a severe impairment.

In response, the Commissioner explains that Russell failed to demonstrate he suffered from a severe impairment that met the twelve-month durational requirement to qualify as a severe impairment. The Commissioner points out that the ALJ properly determined the medical records established that Russell had numerous medical impairments, but the impairments did not significantly limit Russell's work-related activities for twelve consecutive months, and thus, they were not severe. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (the existence of a medically determinable impairment does not always equate to the existence of a severe impairment). The Commissioner asserts that the ALJ considered and analyzed Russell's anemia, leukemia, chemotherapy, and other diagnoses, but then logically and fully explained that these impairments did not limit Russell's activities based on the record evidence. Russell's ability to do significant activities such as riding a bike, chopping and carrying wood, driving, and mowing grass were noted in the decision. Additionally, the ALJ noted that state agency physicians opined that Russell had no severe impairment since his leukemia went into remission in less than twelve months—from Russell's alleged disability onset date of December 27, 2012, when he presented to the hospital and was diagnosed with leukemia until remission and final chemotherapy treatment in May 2013.

The Commissioner further explains that the ALJ addressed Russell's allegation that he experienced cognitive difficulty. The ALJ thoroughly reviewed and discussed the evidence that indicated no cognitive issues, noting that Russell was observed to be alert, had normal recent and remote memory, and also scored in the normal range on the Folstein Mini Mental Examination. The ALJ also addressed Russell's diagnoses of depression and anxiety, finding them to be not

severe because Russell no longer took medication for the impairments and had never sought counseling or therapy. The medical evidence supported good mental health, and the ALJ adequately addressed the paragraph "B" criteria for mental impairments.

Finally, the Commissioner responds that, contrary to Russell's assertion that the ALJ erred by cutting short the questioning during the administrative hearing and not allowing Russell to permit additional testimony regarding his physical limitations, the ALJ allowed Russell to provide as much testimony as he desired at the hearing.

Replying to the Commissioner's arguments, Russell's counsel acknowledges that he was mistaken (based on another case) when drafting the opening brief regarding the ALJ's allowance of testimony during the hearing. Therefore, Russell withdrew his arguments related to the ALJ's allowance of testimony regarding his physical limitations at the hearing (Filing No. 21 at 1). Russell further asserts that his impairment should date back to June 2012 when he began to experience paleness and fatigue and when he stopped working at his job.

Upon review of the ALJ's decision and the record, the Court determines that the Commissioner's characterization of the decision and record is accurate and that the ALJ's decision was supported by substantial evidence, with the conclusions logically flowing from the evidence. The ALJ reasonably articulated all of the reasons for his determination that Russell did not have a severe impairment, and those reasons were supported by substantial evidence. Based on the record evidence, the ALJ noted that Russell's leukemia was in full remission within nine months of the diagnosis and the alleged disability onset date. Based on the evidence, Russell was clinically stable. His vital signs were normal. The ALJ discussed the various assessments and tests that were completed regarding Russell's alleged memory and cognitive issues, and all the tests indicated normal findings. The ALJ accurately noted that no treating source set forth any

functional limitations based on Russell's impairments. The ALJ further discussed Russell's daily activities based on his testimony and the other record evidence. The evidence supports the ALJ's conclusion that Russell's impairments did not cause any significant functional limitation to perform basic work-related activities.

The Court also notes that the ALJ appropriately relied on state reviewing physicians who determined that Russell did not have an impairment that significantly limited his ability to perform basic work-related activities for twelve consecutive months. Concerning Russell's assertion that his impairment should date back to June 2012—rather than December 2012—when he began to experience paleness and fatigue and when he stopped working at his job, the Court notes that it was Russell himself who alleged a disability onset date of December 27, 2012, when he applied for DIB. Additionally, the ALJ considered the timing of when Russell stopped working, and the ALJ specifically explained in his decision that Russell stopped working in June 2012 only because of a business-related layoff, not because of his health challenges. This conclusion is logically supported by the evidence. The evidence shows that on Russell's disability report he responded that his medical condition was "leukemia," and further responded:

> When did you stop working? 06/01/2012
>
> Why did you stop working? Because of other reasons.
>
> Please explain why you stopped working . . . I was laid off.
>
> Even though you stopped working for other reasons, when do you believe your condition(s) became severe enough to keep you from working? 12/27/2012
>
> Did your condition(s) cause you to make changes in your work activity? . . . No[.]

([Filing No. 17-6 at 6](Filing No. 17-6 at 6).)

After a review of the ALJ's decision and the evidence, the Court determines the ALJ's decision is supported by substantial evidence, his reasoning is sufficiently explained, and his

11

conclusions logically follow the evidence and his rationale. The record evidence more than adequately supports the ALJ's decision that Russell's medically determinable impairments did not and could not be expected to significantly limit Russell's ability to perform basic work activities for twelve consecutive months. Thus, Russell's argument for remand on this basis is unavailing.

**B.     The ALJ gave sufficient weight to the report of physical therapist Ms. Hays.**

Russell next asserts that the ALJ erred in the amount of weight given to the opinion of Ms. Hays, the physical therapist who conducted a functional capacity evaluation of Russell after the administrative hearing. Russell points to 20 C.F.R. 404.1513(d), which states,

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to— (1) Medical sources . . . for example . . . therapists."

Russell argues that this section of the Code of Federal Regulations directs that "therapists" are considered "other sources" who can offer opinions about the severity of a claimant's impairment and how it affects the individual's ability to work.

Russell then argues that the ALJ erred by not giving sufficient weight to Ms. Hays' report. Russell explains the ALJ based his decision regarding Ms. Hays' report on a lack of objective and clinical findings and corroborating testing and treatment as well as the extensive activities that Russell continued to engage in, such as riding a bicycle, mowing grass, chopping and carrying wood, driving a car, and using a computer. The ALJ also explained that Ms. Hays' report was inconsistent with the other substantial evidence in the record. Russell further complains that the ALJ based his decision on the fact that Ms. Hays' evaluation was conducted at the request of counsel after the hearing in an effort to generate evidence rather than in an attempt to seek treatment for symptoms. Russell also complains that the ALJ based his decision on the fact that

the payment for the report was presumably made by counsel. The ALJ noted that all these facts were relevant when determining the weight to give to Ms. Hays' report.

In response to Russell's argument, the Commissioner explains that the ALJ is entitled to and should consider the fact that Ms. Hays was not "an acceptable medical source" under the regulations; rather, she was an "other source." The Commissioner asserts that the ALJ sufficiently explained why Ms. Hays' opinions were given very little weight. The Commissioner explains that, as an "other source," Ms. Hays' opinions are assessed according to SSR 06-03p by considering the consistency of the opinion with other evidence, how much support the source provides for the opinion, how well explained the opinion is, the details of the relationship between the source and the claimant, and the area of expertise of the source. The Commissioner points out that the ALJ explained the inconsistencies between Ms. Hays' report and the other evidence from Russell and his treating physicians regarding muscle strength, lack of pain, and physical activities. The ALJ's decision noted that Ms. Hays' report was particularly lacking in support from objective and clinical findings and was offered at the request of Russell's counsel not for the purpose of treatment but to support Russell's application for disability. The Commissioner also asserts that the ALJ properly considered the context in which Ms. Hays offered her opinions, noting that the report was likely paid for by Russell's counsel. The Commissioner asserts that all of these were proper considerations, and the ALJ fully and sufficiently supported his decision by explanation and evidence.

The Court notes that it may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman*, 546 F.3d at 462. In reviewing the ALJ's decision, the Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence. *Dixon*, 270 F.3d at

1176. At its core, Russell's argument is an invitation for the Court to reweigh the evidence to provide additional weight to the report of Ms. Hays. This the Court cannot do.

Upon review of the decision and the evidence, the Court determines that the ALJ sufficiently supported his decision regarding the weight to be given to Ms. Hays' opinion. He adequately explained the rationale for discounting Ms. Hays' factual findings regarding Russell's pain and any functional limitations. The ALJ pointed to inconsistencies between Ms. Hays' opinion and the findings of the treating physicians. The ALJ also accurately described the physical activities that Russell continued to undertake. It also was noted that many of Ms. Hays' findings supported a determination of no limitations. The ALJ further explained that Ms. Hays' own report noted that a "Spinal Sort Test indicated that the claimant's subjective views of his abilities to perform various activities were lower than his actual objective abilities to perform those tasks." ([Filing No. 17-2 at 25](#).) Additionally, it was appropriate for the ALJ to consider the context in which Ms. Hays offered her opinion.

The ALJ sufficiently explained the bases for why he gave very little weight to the opinion of Ms. Hays, and that decision was supported by substantial evidence. Therefore, Russell's argument for remand on this basis also is unavailing.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Russell's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/31/2017

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Daniel L. Brown
DANIEL L. BROWN LAW OFFICE, P.C.
daniel@danielbrownlawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov